```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
JONATHAN RUBIN, on behalf of plaintiff and a
class,

                              Plaintiff,

        -against-                                        18 Civ. 11066 (AT)

MONTEFIORE MEDICAL CENTER, a New                         ORDER
York corporation,

                              Defendant.
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/5/2020

ANALISA TORRES, District Judge:

Plaintiff, Jonathan Rubin, brings this putative class action under the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* (the "FDCPA") against Defendant, Montefiore Medical Center, alleging that Defendant's attempt to collect a medical bill violated the FDCPA. Compl. ¶¶ 1, 11, 23–26, ECF No. 70. Defendant moves for summary judgment. ECF No. 50. For the reasons stated below, Defendant's motion is GRANTED.

## BACKGROUND[1]

The facts discussed in this opinion are undisputed except where otherwise noted. The Court draws all reasonable inferences in favor of Plaintiff, as the nonmovant. *See Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011). Montefiore Medical Center ("Montefiore") is a healthcare provider with its main hospital located in the Bronx, New York. 56.1 ¶ 1, ECF No. 52. Plaintiff, who received medical services there on May 3, 2018, and on May 15, 2020, received a billing statement from Montefiore. *Id.* ¶¶ 2–4.

---

[1] The following facts are drawn from the parties' pleadings and submissions, including the complaint, Defendant's Rule 56.1 statement of undisputed fact and Plaintiff's response, and the parties' declarations. Facts in dispute are so noted. Citations to a paragraph in Defendant's Rule 56.1 statement also include Plaintiff's response.

The May 15, 2018 statement has a return address of Montefiore Medical Center, PO Box 4738, Church Street Station, New York, NY 10261-4738.  The statement lists Plaintiff's account number as 2687933, and on the second page of the statement, which included a litany of hospital and professional services, lists Plaintiff's "[g]uarantor [a]ccount [n]umber" as the same number, 2687933.  The statement outlines three methods of payment: (i) online at mychart.montefiore.org; (ii) by mail to PO Box 4738; or (iii) or by phone.  *Id.* ¶ 4.  Plaintiff dialed the phone number on May 21, 2018, and made a $447.9 payment.  *Id.* ¶ 5.

Defendant imposed additional charges on Plaintiff after May 21, 2018, for pathology work related to his May 3, 2018 treatment.  *Id.* ¶ 6.  Defendant sent additional statements, including one dated August 28, 2018, setting forth Plaintiff's remaining balance.  *Id.* ¶¶ 6–8.  It is Defendant's standard practice to send a letter if a balance is not paid after a patient receives three billing statements.  *Id.* ¶ 11.

Consistent with this practice, Plaintiff received a letter related to his outstanding balance of $94.39 (the "Letter"); the parties dispute whether the Letter was sent by Defendant or by a third party debt collector, Tele-Computer Systems.  *Id.* ¶ 13.  Defendant contends that Tele-Computer System is the name of the telephone software program or hardware used by Defendant's health service receivables department.  *Id.* ¶ 27.  The letter is reproduced in full in the 56.1 statement.  *See id.* ¶ 17.  The Letter references the word "Montefiore" seven times.  *See id.* ¶¶ 17, 19.  By contrast, "Tele-Computer Systems" appears only twice; in the first line of the return address and the payment slip.  *See id.* ¶¶ 17, 19.

The Letter includes Plaintiff's "guarantor number" which is identical to the number listed in the previous statements.  *Id.* ¶ 20.  The Letter lists a phone number that when called is answered by an automated voice that states, "Thank you for calling the Business Office of

2

Montefiore." *Id.* ¶ 22. The Letter contains the same website (mychart.montefiore.org) that was listed on the previous statements Plaintiff received. *Id.* ¶ 29.

## DISCUSSION

I. Legal Standard

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

"The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party." *Connecticut Ironworkers Employers Ass'n, Inc. v. New England Reg'l Council of Carpenters*, 869 F.3d 92, 98–99 (2d Cir. 2017); *see also* Fed. R. Civ. P. 56(c)(1). If the nonmoving party has the ultimate burden of proof on specific issues at trial, the movant may also satisfy its own summary-judgment burden by demonstrating that the adverse party cannot produce admissible evidence to support an issue of fact. *Celotex*, 477 U.S. at 322–23; *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo*, 315 F.3d at 105.

II. Analysis

    A. The FDCPA

"The FDCPA was enacted 'to eliminate abusive debt collection practices by debt collectors.'" *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 82 (2d Cir. 2015) (quoting 15

U.S.C. § 1692(e)).  The FDCPA defines "debt collector" as one who "collects or attempts to collect . . . debts owed or due or asserted to be owed or due [to] another."  15 U.S.C. § 1692a(6).

"The FDCPA is quite clear that it is directed at independent debt collectors and not creditors attempting to collect on their own debts."  *Burns v. Bank of Am.*, 655 F. Supp. 2d 240, 254 (S.D.N.Y. 2008) (internal quotation marks, citation, and alteration omitted), *aff'd*, 360 F. App'x 255 (2d Cir. 2010); *see also* 15 U.S.C. § 1692a(6)(A).  "Such a rule makes sense given that creditors already have a strong incentive to refrain from badgering their customers about overdue debts."  *Vincent v. The Money Store*, 736 F.3d 88, 97 (2d Cir. 2013) (internal quotation marks and citation omitted).

Nevertheless, a creditor becomes subject to the FDCPA's "so-called false name exception," if the creditor "'in the process of collecting its own debts, uses any name other than its own which would indicate that a third person is collecting or attempting to collect such debts.'"  *Id.* at 91 (quoting 15 U.S.C. § 1692a(6) (alterations omitted)).  "A creditor uses a name other than its own when it uses a name that implies that a third party is involved in collecting its debts, pretends to be someone else or uses a pseudonym or alias."  *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998) (internal quotation marks and citation omitted).  "[A] creditor's in-house collection division . . . is not considered a debt collector so long as it uses the creditor's true business name when collecting."  *Id.*  (internal quotation marks, citation, and alterations omitted).

Three elements must be satisfied before deeming a creditor a debt collector pursuant to the false name exception: "(1) the creditor is collecting its own debts; (2) the creditor uses a name other than its own; and (3) the creditor's use of that name falsely indicates that a third

person is collecting or attempting the collect the debts that the creditor is collecting." *Vincent*, 736 F.3d at 98 (internal quotation marks omitted).

"Although a creditor need not use its full business name or its name of incorporation to avoid FDCPA coverage, it should use the name under which it usually transacts business, or a commonly used acronym, or any name that it has used from the inception of the credit relation." *Maguire*, 147 F.3d at 235 (internal quotation marks and citations omitted).

### B. Application of the False Name Exception

Plaintiff concedes that "ordinarily a creditor is not subject to the FDCPA" but claims that Defendant qualifies as a debt collector because the Letter "purported to come from a third-party debt collector," Tele-Computer Systems. Pl. Opp. at 11–26, ECF No. 53. Defendant argues that it is a creditor collecting its own debts, and because the false name exception does not apply, Defendant is outside of the FDCPA's scope. Def. Mem. at 7, ECF No. 51. The Court agrees.

It is undisputed that the first element of the false name exception is satisfied here. Defendant is a creditor collecting on its own debts. *See* 56.1 ¶¶ 2–3. With respect to the latter two elements, Plaintiff can neither show that Defendant "used" a name other than its own, nor that that it falsely indicated that a third person was attempting to collect the debt. Summary judgment is appropriate, therefore, because the record shows that there is no genuine dispute as to whether Defendant is subject to the FDCPA. *See* Fed. R. Civ. P. 56(a).

Because Defendant's principal argument in favor of summary judgment is that Plaintiff has failed to satisfy the third element of the false name exception, Def. Mem. at 9–14, the Court addresses that element first.

5

1. Whether Defendant Falsely Indicated that a Third Party Was Attempting to Collect the Debt

In September 2018, Montefiore sent Plaintiff the Letter, which concerned his outstanding balance of $94.39.  56.1 ¶ 13.  The allegedly false name, Tele-Computer Systems, appears in two locations on the letter:  the top of the letter above the return address and on the payment coupon indicating the name and address to which payment is to be mailed.  *Id.* ¶ 17; *see also* ECF No. 53-1.

"The key question in determining when a creditor's use of a different name gives rise to FDCPA liability is whether, under the least sophisticated consumer standard, a consumer would be deceived into believing that a debt collection effort was being made by an unrelated third party."  *Scalabrini v. PMAB, LLC*, No. 18 Civ. 11152, 2020 WL 1049167, at *3 (S.D.N.Y. Mar. 3, 2020) (citing *Maguire*, 147 F.3d at 236).  "The least sophisticated consumer test is an objective inquiry."  *Easterling, v. Collecto, Inc.*, 692 F.3d 229, 234 (2d Cir. 2012).  "However, in crafting a norm that protects the naive and the credulous the courts have carefully preserved the concept of reasonableness."  *Id.* at 233 (internal quotation marks and citation omitted).  "Accordingly, FDCPA protection does not extend to every bizarre or idiosyncratic interpretation of a collection notice" and courts should apply the standard "in a manner that protects debt collectors against liability for unreasonable misinterpretations of collection notices."  *Id.* at 233–34 (internal quotation marks and citation omitted).  "In the Second Circuit, the least sophisticated consumer standard may be applied as a matter of law and thus is an appropriate issue for disposition on a motion for summary judgment."  *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 253 (S.D.N.Y. 2011) (internal quotation marks and citation omitted).

The Court finds that the Letter, "taken as a whole," would not deceive "even the least sophisticated debtor" into thinking that the collection effort was being made by an unrelated third

6

party. *Schweizer v. Trans Union Corp.*, 136 F.3d 233, 238 (2d Cir. 1998). First, the presence of Tele-Computer Systems in the return address and the address line on the payment slip, without more, is insufficient to establish FDCPA liability. *See, e.g.*, *Nunez v. Mercantile Adjustment Bureau, LLC*, No. 19 Civ. 2962, 2020 WL 2475619, at *8 (E.D.N.Y. May 13, 2020) ("[T]he least sophisticated consumer is still rational and expected to read the entirety of a collection letter."); *McStay v. I.C. Sys., Inc.*, 308 F.3d 188, 191 (2d Cir. 2002) (holding that "when the letter here is read in its entirety, it . . . creates no reasonable confusion as to when the thirty-day time period commenced"); *Seplak v. IMBS, Inc.*, No. 98 C 5973, 1999 WL 104730, at *3 (N.D. Ill. Feb. 23, 1999) (holding that the court must "read the letter in its entirety, not seek out isolated words of phrases that, absent context, might confuse").

Second, reading the letter in its entirety, it is clear that the Letter comes from Defendant. Although Tele-Computer Systems appears in two places, the letter specifically references "Montefiore" or "Montefiore Medical Center" seven times. 56.1 ¶ 19. In the first line, the Letter refers to "our records," and that the account has been transferred to "our unit" for "follow up." *See id.* ¶ 17. The Letter also states that "we offer the following payment methods" and lists: (1) a Montefiore website; (2) a phone number that, when called, says that the caller has reached the "Business Office at Montefiore;" and (3) a mailing address, with the check made payable to "Montefiore Medical Center." *Id.* The Letter also refers the recipient to "Montefiore's Financial Assistance program," thanks the recipient "for choosing Montefiore Medical Center," notes that it is a "privilege to care for you," and states that "[i]t would be preferred not to take additional action as Montefiore Medical Center values you as a patient and appreciates you choosing Montefiore for your healthcare needs." *Id.* Considering this context, the least sophisticated consumer would reasonably understand that the terms "our records," "our unit," "we," and "it is

a privilege to care for you," refer to Montefiore, or at the very least, Montefiore's in-house collection department, and not a third-party debt-collector. The statement that "it is a privilege to care for you" is instructive as to who sent the letter because Plaintiff received medical services from Defendant, not an entity called Tele-Computer Systems. *See id.* ¶ 2.

Plaintiff argues that the Letter differs in a number of ways from previous communications from Defendant. For example, he notes the absence of "the usual Montefiore branding that communications from Montefiore . . . typically contain, i.e., . . . the color of the "M" in Montefiore is always fuchsia and the remaining letters are always blue." Pl. Opp. at 4–8, 13. Although Plaintiff is correct that the Letter does not contain this typical branding, Plaintiff focuses on what is different between the two communications and pays no mind to what is the same. For example, both sets of communications ask Plaintiff to make a check payable to "Montefiore Medical Center," list the same P.O. box address, the same guarantor/account number, and include the option of paying online at "mychart.montefiore.org." Even the least sophisticated consumer would understand that if they were to log in to "mychart.montefiore.org," they would be paying Montefiore directly, not some other party. The prior correspondence between the parties, therefore, also establishes that Tele-Computer Systems was affiliated with Defendant, and more importantly, that Montefiore was the sender. Courts in this circuit and others have declined to subject creditors to FDCPA liability under the false name exception in similar circumstances. *See, e.g.*, *Colman v. North Shore Health System*, No. 97 Civ. 1871, 1998 WL 34077715 (E.D.N.Y. July 2, 1998) (holding that hospital was not subject to false name exception based on bill sent by one of its unincorporated divisions where bill "refer[ed] to the [h]ospital" and bill "nowhere indicate[d] that monies should be paid to any entity other than the [h]ospital"); *Marcotte v. Bank of America*, 2015 WL 2184369, at *3 (S.D. Tex. May 11,

2015) (finding that billing statement "could not give the least sophisticated consumer the false impression that a party unaffiliated with Barclays was collecting their" debt because the statement contained numerous references to Barclays and to making payments online at www.BarclaycardUS.com").

Last, the manner in which calls to a phone number listed in the communications are answered is also relevant to the least sophisticated consumer analysis. *Cf. Maguire*, 147 F.3d at 236 (noting that consumer would not be aware that creditor's debt collection unit was operated by creditor because phone calls were answered by personnel that identified themselves only as employees of differently named debt collection unit). Here, when the phone number listed on the statement is called, it is answered by a recording that explicitly identifies Defendant. 56.1 ¶ 22 ("The [Letter] has a phone number to call, which is 1-347-577-4960. . . . When called, an automated voice answers and states 'Thank you for calling the Business Office of Montefiore.'").

The Court finds, therefore, that the Letter, "taken as a whole," would be identifiable to even the least sophisticated consumer as one sent by Defendant, and not a third party. *See Schweizer*, 136 F.3d at 238.[2]

### 2. Whether Defendant "Used" a Name Other Than its Own

The second element needed to satisfy the false name exception, the "use" element, "focuses on whether the creditor has actively engaged in misrepresenting its identity in some way." *Vincent*, 736 F.3d at 100. For many of the same reasons that the third element of the false

---

[2] In a supplemental filing, Plaintiff argues that the Letter's departure from the Montefiore Style Guide, which sets forth the styling requirements for different communications sent by Defendant, further "indicates that a third person is collecting or attempting to collect such debts." ECF No. 75 at 2 (internal quotation marks, alteration, and citation omitted). The Court is not persuaded, however, that applying the objective least sophisticated consumer standard, a recipient that received the Letter would believe that a third person or party was "collecting or attempting to collect the debts of the credit. *Vincent*, 736 F.3d at 98 (internal quotation marks and citation omitted).

name exception is not satisfied, the second element is also not satisfied.

First, the alleged false name, "Tele-Computer Systems," appears only in the return address and the address line on the payment slip.  It is not set forth in the body of the Letter.  *See* 56.1 ¶ 17.  Second, it is clear from the body of the Letter that Montefiore is not using another name.  Rather, the Letter specifically refers to Montefiore seven times.  *See id ¶¶* 17, 19.  Third, the telephone number listed, when dialed, is answered by an automated voice that states "thank you for calling the Business Office of Montefiore."  *See id ¶* 22.  And last, the Letter explicitly says "[i]t would be preferred not to take additional action as Montefiore Medical Center values you as a patient and appreciates you choosing Montefiore for your healthcare needs" and "[t]hank you for choosing Montefiore Medical Center, it is a privilege to care for you."  *See id ¶* 17.

Given that the Letter uses Defendant's own name multiple times, including when thanking Plaintiff for his patronage, the Courts finds that Defendant was not "actively engag[ing] in misrepresenting its identity in some way."  *Vincent*, 736 F.3d at 100.  Because Defendant is a creditor, it could only be liable under the FDCPA if the false name exception applies.  *See Burns*, 655 F. Supp. 2d at 254.  Because neither the second nor third element of the false name exception is satisfied, Defendant is not subject to liability under the FDCPA.  Summary judgment in Defendant's favor is, therefore, appropriate.

## **CONCLUSION**

For the reasons stated above, Defendant's motion for summary judgment is GRANTED.

The Clerk of Court is directed to terminate the motion at ECF No. 50 and close this case.

SO ORDERED.

Dated: August 5, 2020
New York, New York

_____
ANALISA TORRES
United States District Judge